PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

_____

WAYNE McKNIGHT,

     Plaintiff-Appellant,

v.

KIMBERLY CLARK
CORPORATION, a Delaware
Corporation; GUARDSMARK, INC., a
Delaware Corporation; and TAN JEAN
PATTON, an individual,

     Defendants-Appellees.

No. 97-5179

_____

**Appeal from the United States District Court
for the Northern District of Oklahoma
(D.C. No. 96-CV-121-E)**

_____

Robert L. Briggs (Catherine A. Garchell with him on the brief) of Briggs &
Gatchell Tulsa, Oklahoma for Plaintiff-Appellant.

Denise Cotter Villani of McFall Law Firm Dallas, Texas and Michael Clark
Redman of Doerner, Saunders, Daniel & Anderson Tulsa, Oklahoma (Shelly L.
Dalrymple of Doerner, Saunders, Daniel & Anderson Tulsa, Oklahoma, John E.
McFall, and Steven L. Rahhal McFall Law Firm Dallas, Texas with them on brief)
for Defendant-Appellee.

_____

Before **TACHA** and **BALDOCK**, Circuit Judges, and **GREENE**, District Judge.[*]

**GREENE**, District Judge.

## BACKGROUND

Wayne C. McKnight (McKnight) was employed at Kimberly Clark Corporation (KCC) from February 10, 1992 to July 25, 1995. Tan Jean Patton was employed by Guardsmark, an independent contractor of KCC providing security for its facilities. McKnight was accused of sexually assaulting Patton on KCC's premises on July 17, 1995. Patton reported this assault to McKnight's supervisors and KCC conducted an investigation. It was learned that McKnight had previously participated in offensive sexual conduct towards other female employees at KCC. Specifically, Ms. Cheryl Williams reported that McKnight "followed her in his car, talking nasty." (Aple. App. at 100-01.) Further, Ms. Carol Pinkham reported that McKnight was "touching and feeling" her in the guard house of Ford Glass, the facility in which they worked previously. (Aple. App. at 104-05.) This caused her to request a transfer, which was denied, so she terminated her employment with Ford Glass and went to work for Guardsmark. While working for Guardsmark, Pinkham experienced further sexually suggestive

---

[*] The Honorable J. Thomas Greene, Senior United States District Judge for the District of Utah, sitting by designation.

comments by McKnight who was then employed by KCC. Decision makers at KCC believed that McKnight had sexually assaulted Patton on the basis of the investigation which, among other things had revealed other complaints against plaintiff involving incidents of sexual misconduct in the workplace. (Aple. App. at 45.) Also, there was no evidence which cast doubt upon Patton's credibility. (Aple. App. at 45.) Accordingly, KCC terminated McKnight on July 25, 1995.

McKnight sued defendants on February 20, 1996, alleging that he was terminated due to his age and gender, and that KCC owed him for unpaid wages and overtime. On February 17, 1997, McKnight attempted to amend his claims against Guardsmark and KCC to add a cause of action for negligent hiring and retention. The district court refused to grant leave to amend, and granted summary judgment in favor of defendants. McKnight appealed, asserting that the district court erred in granting summary judgment on the discrimination and unpaid wages claims, and in denying plaintiff's motion to amend the complaint.

## STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp.v.

Catrett, 477 U.S. 317, 322 (1986). We review a grant of summary judgment *de novo,* applying the same standard as the district court. Wolf v. Prudential Instruction Co.of Am., 50 F.3d 793, 796 (10th Cir. 1995). "[We] examine the record to determine whether any genuine issue of material fact was in dispute; if not, we determine [whether] the substantive law was applied correctly," and in so doing "we examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing the motion." Applied Genetics Int'l, Inc.v. First Affiliated Sec. Inc., 912 F.2d 1238, 1241 (10th Cir. 1990). However, "where the non moving party will bear the burden of proof at trial on a dispositive issue" that party must "go beyond the pleadings" and "designate specific facts" so as to "make a showing sufficient to establish the existence of an element essential to that party's case" in order to survive summary judgment. Celotex Corp v. Catrett , 477 U.S. 317, 322, 106 S.Ct. 2548, 2552.

DISCRIMINATION CLAIMS

Age Discrimination

McKnight claims that age was a determinative factor in his termination, thereby violating the Age Discrimination in Employment Act (ADEA.) In evaluating ADEA claims, the Tenth Circuit uses the three-stage analysis outlined in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973) to prove

discrimination when no direct evidence of discrimination exists. At the first stage, the plaintiff must prove a prima facie case of discrimination, i.e., that (1) he is "within the protected age group;" (2) he "was doing satisfactory work;" (3) he "was discharged;" and (4) his position was filled by a younger person. Cone v. Longmont United Hospital Ass'n, 14 F.3d 526, 528-30 (10th Cir. 1994). In the second stage, the defendant must carry the burden to provide a legitimate nondiscriminatory reason for plaintiff's termination. Id. If defendant articulates a legitimate, nondiscriminatory reason for its action, the burden of production shifts back to the plaintiff, who as plaintiff must also carry the burden of persuasion. In the third stage, plaintiff must show that age was a determinative factor in defendant's employment decision, or show that the defendant's explanation was merely a pretext. Id.; Faulkner v. Super Value Stores, Inc., 3 F.3d 1419, 1425 (10th Cir. 1993).

Defendants stipulated that McKnight established a prima facie case of discrimination. Defendant KCC articulated a nondiscriminatory reason for terminating McKnight, i.e., that management had a good faith belief that McKnight had sexually assaulted Patton based on the investigation it conducted. (Aple. App. at 42 - 45.) This moved the case into the third stage in which plaintiff attempted to show that defendant's explanation was "merely a pretext." Cone at 529. In this regard, plaintiff contends that KCC's decision to terminate

5

him was pretextual because of evidence which was known at the time of the investigation as well as evidence which was developed thereafter. He pointed to the following arguments and evidence known by KCC before termination: (1) the fact that no physical evidence was presented to support Patton's claim (Aplt. App. at 591); (2) the fact that Patton first claimed the attack took place at 11:45 p.m., (Aplt. App. at 1630) but later claimed that 10:00 p.m. was the correct time (Aplt. App. at 177); (3) testimony by Mc-Knight's co-worker, Tom Matheny, that the two men were together "almost every minute that night" (Aplt. App. at 163). After the investigation was completed and his termination had occurred McKnight submitted an affidavit by Patton's former employer police chief Hobart Simpson that Patton was not considered to be an honest person (Aplt. App. at 637-39, 643-45). Also, well after completion of the Human Resource Director's report, McKnight deposed Patton and argued that she admitted having a motive to induce KCC to fire McKnight. (Aplt. App. at 562.)[1]

Plaintiff also bases his age discrimination claim on the theory that the work environment at KCC was hostile to older employees. McKnight claims that co-workers often made age related comments to him, some of which were made in

---

[1]  Patton's sexual orientation is Lesbian and she testified that she had heard McKnight say that he "did not like homosexuals" and that she had the impression that he had "animosity toward homosexuals." Aplt. App. at 562.

6

the presence of management (Aplt. App. at 688, 691), that he saw a memo approximately one year prior to his termination forecasting the layoff of four maintenance workers, and stating that "the old man will be the first to go" (Aplt. App. at 752), and that when plaintiff was terminated Mr. Taniguchi, a KKC manager, commented that "he (Taniguchi) was not as old" as McKnight. (Aplt. App. at 393-94.)

Pretext in cases such as this may be established by showing either "that a discriminatory reason more likely motivated the employer or . . . that the employer's proffered explanation is unworthy of credence." REA v. Martin Marietta Corp., 29 F.3d. 1450, 1455 (10th Cir. 1994) (quoting Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 256 (1981)). Where as here plaintiff seeks to demonstrate that the employer's explanation is merely a pretext, this court "requires a showing that the tendered reason for the employment decision was not the genuine motivating reason, but rather was a disingenuous or sham reason." Reynolds v. School District No.1 Denver, 69 F.3d 1523, 1535 (10th Cir. 1995). Summary judgment is not ordinarily appropriate for settling issues of intent or motivation. Setliff v. Memorial Hosp.of Sheridan County, 850 F.2d 1384, 1394 n. 12 (10th Cir. 1988). However, in this case, McKnight has not shown that at the time of his termination there was any dispute or a genuine issue concerning the sincerity of defendants' proffered reason for his termination. In

7

this case the totality of McKnight's proffered evidence is insufficient to raise a genuine doubt about KCC's motivation at the time of termination. An articulated motivating reason is not converted into pretext merely because, with the benefit of hindsight, it turned out to be poor business judgment. Reynolds, 69 F.3d at 1535. The test is good faith belief. Id. In this regard, if KCC believed Patton's allegations and terminated McKnight for that reason, such belief would not be pretextual even if the belief was later found to be erroneous. Based upon the foregoing, this court finds no evidence in this record that KCC's stated reason at the time of termination of McKnight was pretextual.

McKnight's claim of hostile work environment against older employees also fails. The age related comments plaintiff alleges merely amount to "stray remarks" which are insufficient to establish pretext. In Cone, we held that "age-related comments by non-decision makers are not material in showing the [employer's] action was based on age discrimination." 14 F.3d at 531. In order to rely on age related statements, McKnight must show that they were made by a decision maker, and that there was a nexus between the discriminatory statements and the decision to terminate. Id. The statements in this case were made by non-decision makers, except for the alleged statement that Taniguchi made in comparing the two men's ages. That statement alone is not sufficient to infer discriminatory intent. In addition to the foregoing, plaintiff's claim of a general

8

bias against workers over forty years of age is undermined by the fact that plaintiff was fifty years old when hired.

Gender Discrimination

Plaintiff's basis for alleged gender discrimination was the unsupported assertion that Patton's allegations were believed solely because she is a woman. However, no evidence was offered to establish that Patton's gender influenced KCC's decision in any way. The only support for McKnight's claim was his opinion that Patton could not have been believed on any other basis.

Plaintiff's gender discrimination claim fails because his mere belief that he was treated unfairly due to his gender is wholly insufficient to support a finding of pretext. Branson v. Price River Coal Co., 853 F.2d 768, 771 (10th Cir. 1988).

UNPAID WAGES AND OVERTIME

At the time of McKnight's discharge he was earning $17.32 per hour. Plaintiff argues that he was entitled to $18.03 per hour. (Aplt. App. at 807-08.) Defendant KCC contends that plaintiff had not mastered the "third skill block" which was necessary to entitle him to be paid $18.03 per hour. (Aple. App. at 41.) Plaintiff offers no evidence that he was entitled to the pay increase, merely his opinion. Further, plaintiff contends that defendant KCC deprived him of payment for overtime hours. However, plaintiff admitted that he was paid for the

9

overtime hours he included on his time sheet, and that uncompensated time was the result of his failure to adequately record his time. (Aplt. App. 808.) Such failure to record claimed time is fatal to a later claim for such, if the company has no reason to be aware of the overtime.

Finally, plaintiff claims that his lunch breaks constituted "compensable on call time."[2] The Supreme Court specifically addressed this issue in Armour v. Wantock, 323 U.S. 126 (1944) and Sidmore v. Swift & Co., 323 U.S. 134 (1944). In Armour, the court held that eating and sleeping time does not constitute work time, but that "time spent lying in wait" in which an employee may be called upon for the employer's purposes should be compensated. 323 U.S. at 133. In distinguishing between compensable on call time and noncompensable on call time, the test applied by the court was whether the time spent is for the benefit of the employee or the employer. Armour 323 U.S. 126. It is clear to us that lunch breaks are for the benefit of the employee. We therefore reject plaintiff's claim in this regard and hold that KCC is not responsible for any unpaid wages or over time payments, and is entitled to summary judgment on these claims.

---

[2] Plaintiff contended, although this may have been abandoned because it was not in his brief, that during his employment with KCC, he and the other maintenance workers were not allowed to leave the facility for lunch and were not paid the ½ hour allowed for lunch and yet were "on call" during that time. (Aplt. at 807-808)

MOTION TO AMEND COMPLAINT

Plaintiff sought to amend his complaint well after the KCC investigation was complete and five months after discovery cut off. The motion was filed a full year after the date of the initial pleading. Many key individuals would have had to be deposed again if the complaint was amended. Further, it appears that plaintiff was aware of all the information on which his proposed amended complaint was based prior to filing the original complaint. Plaintiff offered no explanation for the undue delay.

We will not disturb a district court's decision to deny a motion to amend if the opposing party will be unduly prejudiced by the amendment. <u>Federal Insurance Co. v. Gates Learjet Corp</u>., 823 F.2d 383, 387 (10th Cir. 1987). In this case, prejudice would clearly result. While we recognize that Fed. R. Civ. P. 15(a) requires that "leave shall be freely given," we have previously held that undue delay is sufficient to deny such leave. See <u>First City Bank v. Air Capitol Aircraft Sales, Inc</u>., 820 F.2d 1127, 1133 (10th Cir. 1987). We hold that the district court did not abuse its discretion in denying the motion to amend the complaint.

AFFIRMED.

11