**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**NOV 9 2004**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

ERNEST P. WIEMER,

      Plaintiff-Appellant,

v.

LEARJET INC.,

      Defendant-Appellee.

No. 02-3055
(D.C. No. 00-CV-1504-MLB)
(D. Kan.)

---

**ORDER AND JUDGMENT**[*]

---

Before **HARTZ**, **O'BRIEN**, and **McCONNELL**, Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

In this age discrimination case, plaintiff Ernest P. Wiemer appeals the district court's grant of summary judgment in favor of his former employer,

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

defendant Learjet Inc. (Learjet). Because plaintiff's evidence did not raise a genuine factual dispute as to whether Learjet's proffered reason for his termination was a pretext for age discrimination, we affirm.

Plaintiff, at age fifty-nine, was employed as a senior financial analyst at Learjet for thirty-seven days. Upon learning of the program analyst opening through his daughter, plaintiff contacted Learjet and was informed that the position involved budgets, forecasts, variances, and similar tasks. On May 4, 1998, he was interviewed by Bob Wassinger, a finance manager; David Erickson, a senior financial analyst; and Mark Herbert, the finance director. Plaintiff was also interviewed by Tom Burian, who later became his manager. After the interviews, the managers all approved of plaintiff. The ultimate decision to hire plaintiff was made by Mark Herbert, subject to review by Chris Crawshaw, the vice president of finance.

During the interview with finance director Herbert, plaintiff alleges he felt that Herbert was threatened by him and was out to get him. Before accepting the position, plaintiff asked to meet with Crawshaw. Plaintiff alleges that he informed Crawshaw of his concerns about Herbert, and that Crawshaw told him Herbert was not performing well and would soon be replaced, perhaps by plaintiff. Plaintiff then accepted the job offer, and began work on July 15, 1998.

The position for which plaintiff was hired involved extensive computer work, requiring advanced spreadsheet skills. After a week of orientation, when plaintiff began receiving accounting assignments, it became apparent that he lacked the computer skills necessary to perform his duties. After sending him to several different training courses, the finance department management began to doubt plaintiff's ability to do the job for which he was hired. Observations by David Erickson, Tom Burian, and Mark Herbert, indicated they had significant concerns regarding plaintiff's skills and work product. *See* Aplee's App. at 89-96, 169–172, 175-78. After discussing the matter with Tom Burian, Mark Herbert decided to terminate plaintiff. The decision was approved by Chris Crawshaw, and plaintiff was terminated on August 21, 1998.

Plaintiff filed a discrimination charge with the Kansas Human Rights Commission (KHRC), alleging that he was terminated because of his age in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621-634. The KHRC conducted an investigation and returned a finding of no probable cause. Plaintiff appealed this determination to the Equal Employment Opportunity Commission, which adopted the KHRC's findings and issued a right-to-sue letter. Plaintiff then filed this discrimination action in the district court. Defendant moved for summary judgment, which was granted by the district

court upon a finding that plaintiff failed to raise a triable issue as to whether Learjet's proffered reason for its decision was a pretext for age discrimination.

We review the district court's grant of summary judgment de novo, applying the same legal standard used by the district court. *Revell v. Hoffman*, 309 F.3d 1228, 1232 (10th Cir. 2002), *cert. denied*, 124 S. Ct. 83 (2003). A district court properly grants summary judgment if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "To determine whether a dispute is genuine, we must consider whether a reasonable jury could return a verdict for the nonmoving party." *Revell*, 309 F.3d at 1232 (further quotation omitted). We look to the applicable substantive law when evaluating whether a fact is material. *Id.* Further, "it is not enough that the nonmovant's evidence be 'merely colorable' or anything short of 'significantly probative.'" *Id.* (*quoting Comm. for the First Amendment v. Campbell*, 962 F.2d 1517, 1521 (10th Cir. 1992)) (further quotation omitted).

In discriminatory discharge cases, once a plaintiff makes a prima facie case, and the defendant advances a legitimate, nondiscriminatory reason for its decision, the plaintiff *must* produce either direct evidence of discrimination or indirect evidence that the defendant's proffered reason was a pretext for discrimination. *Selenke v. Med. Imaging of Colo.*, 248 F.3d 1249, 1260 (10th Cir.

2001). "Pretext can be shown by such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." *Hardy v. S.F. Phosphates Ltd. Co.*, 185 F.3d 1076, 1080 (10th Cir. 1999) (further quotation omitted).

Plaintiff argues that in evaluating his showing of pretext, the district court failed to consider his affidavit and the testimony of Will Evans, the finance department manager through whom plaintiff's daughter learned of the opening. He argues that this evidence was sufficient to raise a factual dispute regarding Learjet's true motivation. Will Evans testified that plaintiff had successfully completed a project for him which required basic Excel skills, and that he thought plaintiff should have been given more training instead of being terminated. Aplt's App. at 97-98, 130. Plaintiff's affidavit detailed his past finance experience, but did not refute the allegation that defendant was disappointed by his lack of spreadsheet skills. *See id.* at 32-43. Plaintiff argues he cast doubt on Learjet's proffered explanation by presenting "overwhelming evidence that his prior experience as a financial analyst and related positions had resulted in computer skills which, in most important ways, [were] clearly superior to those responsible for his discharge." Aplt's Br. at 11.

We have held that, in evaluating the sufficiency of a plaintiff's pretext evidence, it is the employer's *perception* of the plaintiff's abilities that is relevant, not the plaintiff's view of his own qualifications. *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1231 (10th Cir. 2000) ("[A] challenge of pretext requires us to look at the facts as they appear[ed] to the person making the decision to terminate [the] plaintiff."); *Furr v. Seagate Tech., Inc.*, 82 F.3d 980, 988 (10th Cir. 1996) ("It is the manager's perception of the employee's performance that is relevant, not plaintiff's subjective evaluation of his own relative performance.").

Even if Learjet's assessment of plaintiff's abilities was incorrect, this does not show pretext unless there is reason to believe the employer failed to exercise its business judgment in good faith. *See McKnight v. Kimberly Clark Corp.*, 149 F.3d 1125, 1129 (10th Cir. 1998) ("An articulated motivating reason is not converted into pretext merely because, with the benefit of hindsight, it turned out to be poor business judgment. The test is good faith belief.") (citation omitted). In fact, plaintiff himself admitted that his Excel skills were weak and that he was having difficulty with the work assigned to him. *See* Aplee's App. at 42-52; Aplt's App. at 33-37.

Plaintiff argues that he showed pretext because his years of experience in finance entitled him to "the opportunity . . . to familiarize himself with . . . the

Excel program," Aplt's Br. at 11, and because defendant should have been required to prove that "a critique [of his deficiencies] was made in writing and presented to Wiemer," *id.* at 9. This argument "merely establishes that [plaintiff's] view of appropriate management contrasts with that of [Learjet's] supervisors," and does not establish that Learjet's proffered reason was a pretext for age discrimination. *Selenke*, 248 F.3d at 1261. Further, plaintiff's acceptance of Learjet's offer was specifically conditioned on his agreement that his employment would be "at will," and could be "terminated at any time, for any reason." Aplee's App. at 87.

Will Evans' testimony did not raise a triable issue of pretext because he admitted the project done for him by plaintiff was "fairly simple," requiring only basic skills, and that he had no "facts" to support his belief that plaintiff was terminated based on age, other than his belief that inadequate Excel skills was not a sufficient ground for termination. Aplt's App. at 99, 130. We conclude the district court did not err in granting summary judgment in favor of Learjet on plaintiff's ADEA claim.

The judgment of the United States District Court for the District of Kansas is AFFIRMED.

Entered for the Court

Terrence L. O'Brien
Circuit Judge