FILED
United States Court of Appeals
Tenth Circuit

June 2, 2010

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

ROLAND McNEIL,

      Plaintiff-Appellant,

v.

KENNECOTT HOLDINGS,

      Defendant-Appellee.

No. 09-4178
(D.C. No. 2:08-CV-00041-DAK)
(D. Utah)

**ORDER AND JUDGMENT**[*]

Before **BRISCOE**, Chief Judge, **BALDOCK**, and **TACHA**, Circuit Judges.


Roland McNeil, pro se, appeals from the district court's entry of judgment in favor of Kennecott Holdings on his employment discrimination claims. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

---

[*]    After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## Background

McNeil, an African-American, filed a two-paragraph complaint in Utah state court. He alleged no facts, stating only that he represented himself "in the matter of employment discrimination based on race, color, wrongful termination, retaliation, conspiracy, slander, blasphemy, harassment, [and] religion from January 16, 2007 through May 21, 2007." R. at 16. He invoked Title VII of the Civil Rights Act of 1964 (Title VII) and the Utah Antidiscrimination Act of 1965, and he sought slightly in excess of $3.55 million in damages plus costs and fees.

After Kennecott removed the action to federal court, discovery ensued and fleshed out the factual bases of McNeil's claims. He began working for Kennecott in October 2006, driving haul trucks at Kennecott's mine. He and other drivers used personal two-way radios to communicate during their shifts. McNeil alleged that in January 2007, he overheard the following radio exchange between two co-workers: "'Oh, that Roland just like a black dog trying to herd a white sheep.' . . . 'Oh, you mean like a black Labrador dog?'" R. at 89-90 (McNeil Depo. at 262:24-25, 263:2-3). McNeil responded to the black-dog comment on his radio by saying "[w]here I'm from, people get killed for less than that." *Id.* at 90 (McNeil Depo. at 263:6-7).

On the day of the black-dog comment, McNeil rode home with another employee, Allen Fossat, and discussed the incident. According to Mr. Fossat, McNeil screamed at him during the entire ride and made violent threats against

-2-

his co-workers. Two months later, McNeil's son, Quentin, broke into Mr. Fossat's home and severely assaulted him, allegedly at McNeil's urging. Quentin pleaded guilty to an assault charge. At the time of the district court's judgment, McNeil was free on bail in connection with charges filed against him stemming from the assault.

At his deposition, McNeil also claimed he was called a "button pusher," a term he initially claimed was racist but eventually conceded was a reference to his habit of using rubber bands to hold down the transmittal buttons on multiple two-way radios in order to broadcast commercial radio programs to his co-workers and prevent them from communicating on the devices. McNeil further stated that a co-worker discussing the Chicago Bears opined that the team "needed . . . another little young nigger for a safety." *Id.* at 106 (McNeil Depo. at 364:17-18). He also described a confrontation with another co-worker over the way he was driving his truck and claimed that other white workers threatened to hurt him. Additionally, McNeil claimed a co-worker made a 911 call to report that McNeil had a gun, an act he perceived as another example of racially motivated discrimination in the workplace because the resulting search disclosed no weapon.

McNeil informally complained about his treatment to management several times and eventually called Kennecott's "Speak OUT" line at the end of April 2007. The Speak OUT line is available for formal reports of employment issues

to management. Immediately after that call, Kennecott investigated McNeil's complaints by interviewing some 30 employees, many of whom said that McNeil had either threatened to hurt or kill them or other white co-workers and their families. For example, some employees said McNeil displayed a six- or seven-inch knife and said he knew how to take care of the white employees: "cut deep [and] cut often." Aplee. Supp. App., Vol. 1, at 179. As another example, McNeil allegedly told two employees that he was "going to kill all you white bastards [before] the day is over." *Id.* at 170. The investigation also disclosed that an employee described wanting to go to Iraq to kill a few "sand niggers." *Id.* at 171. Another employee told the Kennecott investigator that yet another employee, referring to McNeil, said "that nigger is gonna cause problems." *Id.* at 180. McNeil did not hear either of the employees' comments himself.

On May 21, 2007, Kennecott terminated McNeil's employment due to the violent threats it uncovered during the investigation. McNeil eventually filed suit and, after discovery closed, Kennecott filed a motion for summary judgment. McNeil twice moved for an extension of time to file a response, which a magistrate judge denied. Apparently undeterred, and just two days before oral argument on Kennecott's motion, McNeil submitted a response brief with supporting exhibits and a motion for leave to file the brief out of time, which gave no reason for the late filing. He also filed a motion to strike an exhibit from Kennecott's summary judgment motion pertaining to the charges against his son.

-4-

The magistrate judge recommended granting Kennecott's motion for summary judgment and denying McNeil's motions to file the late response and to strike the exhibit. McNeil filed a timely objection to the magistrate judge's report and recommendation but raised no issue regarding the denial of his procedural motions. The district judge overruled the objections and affirmed and adopted the magistrate judge's report and recommendation in its entirety.

## Discussion

On appeal, the only reviewable issues McNeil raises pertain to the district court's grant of summary judgment to Kennecott on his substantive claims of discrimination, retaliation, and hostile work environment in violation of Title VII.[1] Our review is de novo. *Baca v. Sklar*, 398 F.3d 1210, 1216 (10th Cir. 2005). "We view the evidence and reasonable inferences drawn from the evidence in the light most favorable to [McNeil as] the nonmoving party." *Id.* Summary judgment should be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue

---

[1]     McNeil also takes issue with the denial of his motion to strike Kennecott's summary judgment exhibit, referred to above. Because he failed to raise that issue in his objections to the magistrate judge's report and recommendation, he has waived appellate review under our firm waiver rule, and none of the exceptions to that rule apply. *See Wardell v. Duncan*, 470 F.3d 954, 958 (10th Cir. 2006) (explaining that the firm waiver rule does not apply (1) when a pro se litigant was not notified of the time period for filing an objection and the consequences for failing to do so, (2) "when the 'interests of justice' warrant," or (3) when the party that failed to object makes a showing of plain error). Similarly, McNeil's complaints about other adverse discovery rulings are also waived for failure to file objections.

as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Because of McNeil's pro se status here and in the district court, we construe his filings liberally. *See Yang v. Archuleta*, 525 F.3d 925, 927 n.1 (10th Cir. 2008).[2]

McNeil challenges the district court's consideration of the circumstantial evidence of discrimination under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973). Under that framework, a plaintiff has the burden to establish a prima facie case of discrimination, which shifts the burden "to the employer to articulate some legitimate,

---

[2] We pause to note that the fact McNeil was not permitted to file his response to Kennecott's summary judgment motion does not mean, as Kennecott suggests, that the district court was free to grant the motion on that ground alone:

> If the nonmoving party fails to respond, the district court may not grant the motion without first examining the moving party's submission to determine if it has met its initial burden of demonstrating that no material issues of fact remain for trial and the moving party is entitled to judgment as a matter of law. If it has not, summary judgment is not appropriate, for no defense to an insufficient showing is required.

*Murray v. City of Tahlequah, Okla.*, 312 F.3d 1196, 1200 (10th Cir. 2002) (alteration and quotation omitted). Here, the district court not only dispatched its task, it went even further. Despite denying McNeil's motion to file a late summary judgment response, the district judge stated that he considered the evidence McNeil attached to the disallowed response, concluding that it did not change the outcome of the case. We, too, have considered that evidence and agree that it does not warrant a different result. Nor do we view the disallowed response as prohibiting McNeil from making any legal arguments on appeal because the district judge considered the arguments McNeil advanced in his objections.

nondiscriminatory reason" for its action, *id.* at 802. If the employer meets its burden, the plaintiff has the burden to show that the employer's reason is pretextual. *Id.* at 804.

We first examine McNeil's discrimination and retaliation claims. The district court determined that he failed to establish a prima facie case of discrimination but alternately concluded that he had not shown that Kennecott's legitimate, nondiscriminatory reason for its decision—reports that McNeil made violent threats against his co-workers and their families—was pretextual. The court reached the same conclusion regarding pretext with respect to McNeil's claim that Kennecott terminated his employment in retaliation for his call to the Speak OUT line. We need only address pretext, and we agree with the district court. At most, McNeil advances a conspiracy theory: that Kennecott employees coordinated false stories that McNeil made threats against them and their families, and that he informed Kennecott of this. But the relevant inquiry is how the facts appeared to Kennecott at the time of its employment decision and whether the decision was made in good faith based on those facts. *See McKnight v. Kimberly Clark Corp.*, 149 F.3d 1125, 1129 (10th Cir. 1998). Thus, even taking into consideration McNeil's claim that he told Kennecott's management that the reports of his violent threats were conspiratorial fabrications, we conclude there is insufficient evidence for a reasonable juror to find that Kennecott made its decision in bad faith. Kennecott apparently decided to

believe its employees' reports of threats by McNeil rather than his claim of fabrication in the course of deciding to fire McNeil, which is the sort of business judgment that courts may not second-guess. *See Young v. Dillon Cos.*, 468 F.3d 1243, 1250 (10th Cir. 2006); *McKnight*, 149 F.3d at 1127, 1129 (concluding that plaintiff failed to establish pretext where employer believed in good faith the allegations of an employee that plaintiff sexually assaulted her, even if belief later proved erroneous). Without more, it does not support an inference of discrimination or retaliation.

McNeil also points to the temporal proximity between his call to the Speak OUT line and his discharge as evidence of retaliation. While close temporal proximity between protected activity and an adverse employment decision can give rise to an inference of pretext, there must also be evidence that the employer had a retaliatory motive. *See Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164, 1172 (10th Cir. 2006). There is no such evidence here.

Turning to McNeil's hostile work environment claim, the relevant standard is whether "the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Hall v. U.S. Dep't of Labor, Admin. Review Bd.*, 476 F.3d 847, 851 (10th Cir. 2007) (quotation omitted). In reaching its conclusion that the comments and incidents of record did not meet this standard, the district court took account of the fact that

Kennecott's mining operation was the sort of "'blue collar environment where crude language is commonly used,'" R. at 368 (quoting *Gross v. Burggraf Constr. Co.*, 53 F.3d 1531, 1538 (10th Cir. 1995)), as well as McNeil's admitted use of such language. We see no error in the court's analysis. As to the "black dog" comment, McNeil argues that a jury should determine whether it was, as he contends, a racially hostile remark directed at him or, as one of the Kennecott employees explained, made as a reference to either a hallucination seen by sleep-deprived truckers or a movie called *Black Dog*, which involves a trucker who has experienced the hallucination. We disagree. Even assuming that this comment was uttered as McNeil recalled and was meant as a racial slur, it is not sufficiently severe to create an actionable claim of hostile work environment, either standing alone or viewed in connection with the few other incidents or arguably racist (and reprehensible) comments of record, none of which were directed at or heard by McNeil during his employment.

The judgment of the district court is AFFIRMED.

Entered for the Court

Per Curiam