**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAR 21 2003**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

JIMMIE DEAN,

        Plaintiff - Appellant,

v.

THE BOEING COMPANY,

        Defendant - Appellee.

No. 02-3144
(D.C. No. 00-CV-1256-JTM)
(D. Kansas)

**ORDER AND JUDGMENT** *

Before **HENRY** , **ANDERSON** , and **O'BRIEN** , Circuit Judges.

Jimmie Dean filed this action against his employer, The Boeing Company, alleging that Boeing retaliated against him because his wife had sued the company in a separate class action case asserting racial discrimination. According to Mr. Dean, Boeing retaliated by suspending him for three days for his purported sexual harassment of a coworker, decertifying him as a union steward, and failing to adequately investigate his internal complaint of racial discrimination.

---

* This order and judgment is not binding precedent, except under the doctrines of res judicata, collateral estoppel, and law of the case. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

The district court granted summary judgment to Boeing on all of Mr. Dean's claims.

We affirm the district court's decision. As we explain below, the record establishes that Boeing suspended Mr. Dean for three days because it reasonably believed that he had sexually harassed a coworker.

I.  BACKGROUND

Since April 1997, Mr. Dean has worked as an hourly employee for Boeing in Wichita, Kansas. His wife Mary Dean is also an hourly employee for Boeing.

In June 1998, a group of Boeing employees filed a class action suit against the company in the United States District Court for the District of Washington alleging racial discrimination. (Williams v. Boeing Co.). When the suit was filed, Mary Dean was the only named plaintiff from Boeing's Wichita facilities. On January 22, 1999, Boeing and the Williams plaintiffs announced that they had reached a settlement. The Washington court subsequently approved the settlement, and, under its terms, both Mary Dean and Mr. Dean received payments. Certain members of the class have objected, and their appeal is pending in the Ninth Circuit.

On February 22, 1999, Stacey Anderson, a coemployee of Mr. Dean's, filed a complaint with Boeing's Equal Employment Opportunity Department alleging

that she had been sexually harassed by him.[1]  After two of Boeing's EEO investigators interviewed Ms. Anderson, Boeing hired Jeffrey Emerson, an attorney with a Wichita law firm, to investigate the allegations.  Mr. Emerson interviewed twenty Boeing employees, including Ms. Anderson, Mr. Dean, and various coworkers and managers.  In April 1999, Mr. Emerson issued a written report of his investigation to the chief counsel of Boeing's Wichita office.  Mr. Emerson concluded that his "overall impression [was] that Anderson is telling the truth in claiming that Dean sexually harassed her."  Aplt's App. at 472.

According to Mr. Emerson's report, Ms. Anderson stated that between October 1997 and January 1999, Mr. Dean regularly made sexually inappropriate comments to her.  The comments included references to oral sex and remarks about Ms. Anderson's appearance.  According to Ms. Anderson, Mr. Dean would sing a sexually suggestive song while making suggestive hand gestures.  She added that Mr. Dean would often tell her that she "needed to get rid of [her boyfriend] and find a real man."  Id. at 474.  Mr. Dean denied that he made inappropriate comments or engaged in inappropriate conduct.  However, several coemployees told Mr. Emerson that they had witnessed the alleged harassment.

---

[1]  Ms. Anderson has since married and changed her name.  However, following the district court, we refer to her by the name she used at the time of the alleged harassment at issue here.

After receiving Mr Emerson's report, Boeing convened a disciplinary meeting. The meeting was attended by the chief counsel of Boeing's Wichita office, employees from Boeing's EEO office, Mr. Dean's second-level manager, and Mr. Dean's representative from the Personnel Department. Each attendee received a copy of Mr. Emerson's report.

At the meeting, Boeing's chief counsel recommended that Mr. Dean receive a three-day suspension. According to the chief counsel, in instances involving inappropriate, sexually suggestive language or conduct (but no physical contact) the presumptive discipline is a suspension. When the conduct has occurred frequently and over a long period of time, or when the conduct is isolated but severe, the company has determined that a three-day suspension without pay is generally the appropriate measure. Between January 1998 and May 1999, eleven employees received three-day suspensions for inappropriate statements or conduct.

The attendees at the disciplinary meeting agreed with the chief counsel's recommendation. Accordingly, on May 14, 1999, Mr. Dean received a corrective action memorandum and a three-day suspension without pay.

In January 2000, Mr. Dean filed a complaint with the Boeing EEO office alleging that a coworker had made racially inappropriate comments to him. The EEO office began an investigation, but reported that it had closed the investigation

after learning that Mr. Dean had attempted to speak with two witnesses about their testimony.

In May 2000, Mr. Dean was removed from his position as a union steward, a position he had held since his election in October 1997. Boeing presented evidence that the decision was a necessary cost-cutting measure and that Mr. Dean's removal was based on his lack of seniority.

Mr. Dean filed the instant action in June 2000, alleging claims of retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3(a), and Kansas law, and breach of contract (the consent decree in the Williams case). The district court granted summary judgment to Boeing on all of Mr. Dean's claims.

As to the breach of contract claim, the court found it precluded by the terms of the Williams consent decree. The court reasoned that the issue of the validity of the consent decree was pending on appeal and that the decree was not yet enforceable. Additionally, the decree provided for alternative dispute resolution of allegations that it had been breached.

As to the retaliation claims, the court concluded that two of the alleged retaliatory acts—the decertification of Mr. Dean from the union steward position and the alleged failure to investigate his internal racial discrimination complaint—were not actionable for two reasons. First, the court reasoned, these acts did not constitute substantial adverse employment actions, as required to

support a Title VII retaliation claim. See Aplt's App. at 1397 (District Court Order, filed March 29, 2002) (citing Sanchez v. Denver Pub. Schs., 164 F.3d 527, 533 (10th Cir. 1998)). Second, the court concluded, Mr. Dean "has failed to prove any evidentiary basis for the conclu[sion] that wrongful retaliation lay behind either [the decertification or the failure to investigate]." Id.

With regard to Mr. Dean's three-day suspension for sexual harassment of a coworker, the court concluded that he had failed to offer any direct evidence that Boeing management acted with a retaliatory motive. Accordingly, the court applied the burden-shifting framework established by McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). The court found no evidence that Boeing's asserted reason for the three-day suspension (Mr. Dean's harassment of a coworker) was a pretext for discrimination.

## II. DISCUSSION

On appeal, Mr. Dean contends that he presented (1) direct evidence of Boeing's retaliatory motive and (2) evidence that the sexual harassment findings were a pretext for discrimination. As a result, he contends, the district court erred in granting summary judgment to Boeing. Significantly, Mr. Dean does not challenge the district court's finding that his decertification from the union steward position and the alleged failure to investigate his internal racial

-6-

discrimination complaint did not constitute substantial adverse employment actions, as required to support a Title VII retaliation claim. Accordingly, we focus on the first of the allegedly retaliatory actions by Boeing—the three-day suspension based on the sexual harassment complaint.

We review de novo the district court's grant of summary judgment, viewing the record in the light most favorable to the party opposing summary judgment. McKnight v. Kimberly Clark Corp., 149 F.3d 1125, 1128 (10th Cir. 1998). Summary judgment is warranted if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(c). We look to the applicable substantive law when evaluating whether a fact is material. Revell v. Hoffman, 309 F.3d 1228, 1232 (10th Cir. 2002). "To determine whether a dispute is genuine, we must consider whether a 'reasonable jury could return a verdict for the nonmoving party.'" Id. (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). Applying these standards, we conclude that Mr. Dean cannot establish a genuine issue for trial.

## A. Title VII Retaliation Claims

In order to establish a prima facie case of retaliation in violation of Title VII of the Civil Rights Act, plaintiff must prove that: (1) he was engaged in protected opposition to Title VII discrimination; (2) he was subjected to an adverse employment action; and (3) a causal connection existed between the protected activity and the adverse employment action. Sanchez , 164 F.3d at 533; see generally 42 U.S.C. § 2000e-3(a) (prohibiting retaliation because an employee "has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter"). A plaintiff can demonstrate a causal connection either by direct evidence or by inferences arising from an adverse employment action that closely follows the protected conduct. See Candelaria v. EG & G Energy Measurements, Inc. , 33 F.3d 1259, 1261-62 (10th Cir. 1994).

Once the plaintiff has presented a prima facie case, the burden shifts to the defendant to advance a legitimate, nonretaliatory reason for the challenged employment action. See Berry v. Stevinson Chevrolet , 74 F.3d 980, 986 (10th Cir. 1996). If the defendant provides such reasons for the employment action, the plaintiff may avoid summary judgment by showing that the defendant's proffered reason for the adverse employment action is unworthy of belief and thus a pretext

for retaliation.   See id.  A plaintiff may demonstrate pretext by showing

"weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in

the employer's proffered legitimate reasons for its action [such] that a reasonable

factfinder could rationally find them unworthy of credence."        Garrett v.  Hewlett

Packard Co. , 305 F.3d 1210, 1217 (10th Cir. 2002) (internal quotation marks

omitted) (alteration in original).


## B.  Direct Evidence of Retaliation

Mr. Dean argues that he presented direct evidence of Boeing's retaliatory

motive and that, as a result, the district court erred in granting summary judgment.

He points to the statements and conduct of Ricky Lee, his second-level supervisor.

As the district court noted, Mr. Dean presented evidence that Mr. Lee made

certain disparaging comments about the class action lawsuit, stating that he did not

think that the plaintiffs in that case would prevail.     [2]   Additionally, Mr. Dean notes

that it was Mr. Lee who transferred Mary Dean to the same shift as Ms. Anderson.

Invoking evidence that it was this transfer of Mary Dean that led Ms. Anderson to

file her sexual harassment complaint against him, Mr. Dean asserts that Mr. Lee's

---

[2]  The district court further noted that Mr. Lee eventually changed his mind about
the class action suit, "indicat[ing] that the Deans were doing very well in their
settlement."  Apt's App. at 1398.

decision was "[t]he motivating factor sparking the chain of events leading to plaintiff's three-day suspension." Aplt's Br. at 29.

We agree with the district court that this evidence falls far short of direct evidence of a retaliatory motive underlying Mr. Dean's three-day suspension. Mr. Lee's comments about the merits of the class action lawsuit were unrelated to Ms. Anderson's complaints of sexual harassment. Moreover, the fact that Mr. Lee's decision to transfer Mary Dean to the same shift as Ms. Anderson may have led Ms. Anderson to file the formal complaint against Mr. Dean does not constitute evidence of Boeing's motive in eventually deciding to suspend Mr. Dean for three days. Furthermore, the decision to suspend Mr. Dean was made after an outside investigator interviewed witnesses, reviewed documents, and found Ms. Anderson's allegations to be credible. Mr. Dean presented no evidence that Mr. Lee's alleged retaliatory motive tainted the investigative findings.

Finally, the decision to suspend Mr. Dean was made by a committee. of five people. Although Mr. Lee was one of the members of that committee, the uncontroverted evidence establishes that the decision was based on the recommendation of the chief counsel of Boeing's Wichita facility, who relied on Mr. Emerson's investigative report. Thus, even if Mr. Lee had had some retaliatory motive, Mr. Dean has presented no evidence that Mr. Lee himself was responsible for the committee's decision.

-10-

## C. Evidence of Pretext

Mr. Dean also argues that Boeing's asserted reason for his three-day suspension—the sexual harassment of Ms. Anderson—was pretextual. Thus, according to Mr. Dean, because he presented evidence that he did not harass Ms. Anderson, a reasonable jury could conclude that the real reason Boeing suspended him was because he and his wife had litigated the class-action race discrimination lawsuit.

In support of his claim of pretext, Mr. Dean points to Ms. Anderson's delay in filing the formal complaint, noting that, in her formal complaint in February 1999, she referred to incidents of harassment that occurred as early as the fall of 1997. Mr. Dean identifies numerous instances in which Ms. Anderson could have complained to management about the alleged harassment but did not do so. Mr. Dean also notes the circumstances surrounding Ms. Anderson's filing of the formal complaint, citing evidence that Ms. Anderson was upset about Mary Dean's transfer to the same shift on which Ms. Anderson was working and that Ms. Anderson may have filed the formal complaint against Mr. Dean in order to avoid working with Mary Dean. Additionally, Mr. Dean contends that the conduct of which he was accused by Ms. Anderson did not produce a hostile work environment under governing case law. See Aplt's Br. at 23. Finally, Mr. Dean

points to a number of alleged deficiencies in the investigation of the formal complaint.

After reviewing Mr. Emerson's investigative report, we conclude that the evidence identified by Mr. Dean does not establish the kind of "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" necessary to support a reasonable jury's finding of pretext. See Garrett, 305 F.3d at 1217. As we have observed, "the pertinent question in determining pretext is not whether the employer was right to think that the employee engaged in misconduct but whether the belief was genuine or pretextual." Pastran v. K-Mart Corp., 210 F.3d 1201, 1206 (10th Cir. 2000) (internal quotation marks omitted). "An articulated motivating reason is not converted into pretext merely because, with the benefit of hindsight, it turned out to be poor business judgment. The test is good faith belief." McKnight, 149 F.3d at 1129.

Here, Mr. Emerson, the outside attorney hired by Boeing to investigate Ms. Anderson's formal complaint, stated that his "overall impression [was] that [Ms.] Anderson is telling the truth in claiming that [Mr.] Dean sexually harassed her from October 1997, to January 1999." Aplt's App. at 472. As the district court noted, Mr. Emerson interviewed twenty employees, including ten of Ms. Anderson's and Mr. Dean's coworkers, four managers, and four employees from Boeing's Equal Employment Opportunity Office.

Mr. Emerson's report contains several kinds of statements offering support for Ms. Anderson's allegations.  First, several Boeing employees informed Mr. Emerson that they had observed Mr. Dean harassing Ms. Anderson.        See, e.g. , Aplt's App. at 477 (statement of employee that "[Mr.] Dean began harassing [Ms.] Anderson several months before [Ms.] Anderson filed her written complaint in February 1999);  id. at 478-79 (statement of another employee "corroborat[ing] much of the conduct [of Mr. Dean] that [Ms.] Anderson reported during her interview");  id. at 481-82 (statement of employee that Mr. Dean made statements in a "lewd and lascivious" manner to Ms. Anderson).  Two of these witnesses indicated that Mr. Dean had made offensive remarks to another employee.        See id. at 477-78.  Additionally, one employee and a manager informed Mr. Emerson that Ms. Anderson had complained orally about Mr. Dean's offensive statements and conduct.   See id. at 481, 482 (statement of coemployee that Ms. Anderson informed her of an offensive remark made by Mr. Dean);      id. at 484 (statement of first-level manager indicating that Ms. Anderson complained to her in September 1998 about Mr. Dean's making sexual comments).

Although Mr. Dean has identified certain inconsistencies and omissions in these various statements, and although he has also noted that there are a number of other witnesses that Mr. Emerson did not interview, these asserted flaws in Mr. Emerson's investigation do not constitute evidence that Boeing's reliance on the

report was pretextual. Cf. Hardy v. S.F. Phosphates, 185 F.3d 1076, 1081-82 (10th Cir. 1999) (stating that "[t]he investigative team's decision to believe [the complainant's] account after two upper-level managers substantiated it, and not to interview those who merely knew about the event through hearsay does not give rise to an inference of pretext") (internal citation omitted); McKnight, 149 F.3d at 1128-29 (concluding that inconsistencies in a statement regarding sexual assault and existence of other exculpatory evidence were insufficient to support a jury's finding of pretext and stating that "if [the employer] believed [the complainant's] allegations [of sexual assault] and terminated the plaintiff for that reason, such belief would not be pretextual even if the belief was later found to be erroneous").

Moreover, Boeing offered evidence that the length of Mr. Dean's suspension was consistent with that of other employees who had engaged in similar conduct. Finally, the fact that Mr. Dean's conduct may not have risen to the level necessary to create a claim for a hostile work environment is not dispositive. As reported by Ms. Anderson, Mr. Dean's statements and actions were offensive and inappropriate and warranted a reasonable employer's imposition of discipline. Cf. Hardy, 185 F.3d at 1082-83 (stating that the employer "may have selected [the plaintiff] as a sacrificial lamb in order to prove it would not tolerate sexual harassment" but that such an action "is legal if it was not based on [the plaintiff's] age or disability" because "it is not our province to decide whether [the employer's proffered] reason

-14-

was wise, fair or even correct, ultimately, so long as it truly was the reason for plaintiff's termination") (internal quotation marks and citations omitted).

## III. CONCLUSION

Accordingly, we AFFIRM the district court's grant of summary judgment to Boeing.

Entered for the Court,


Robert H. Henry
Circuit Judge