FILED
United States Court of Appeals
Tenth Circuit

August 19, 2013

Elisabeth A. Shumaker
Clerk of Court

**PUBLISH**

## UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

JENNIFER PRATT,

Plaintiff-Appellee,

v.

No. 11-3282

JOSEPH PETELIN, M.D.,

Defendant-Appellant.

**Appeal from the United States District Court
for the District of Kansas
(D.C. No. 2:09-CV-02252-GLR)**

Mark A. Lynch (Kyle R. Ramsey with him on the briefs) of Holbrook & Osborn, P.A., Overland Park, Kansas, for Defendant-Appellant.

John W. Witten (Mary C. O'Connell with him on the brief) of Douthit Frets Rouse Gentile & Rhodes, L.L.C., Kansas City, Missouri, for Plaintiff-Appellee.

Before **LUCERO**, **SEYMOUR**, and **MURPHY**, Circuit Judges.

**SEYMOUR**, Circuit Judge.

Mrs. Jennifer Pratt sued Joseph Petelin, M.D. for medical negligence. The district court submitted four factual theories of negligence to the jury, which returned a general verdict against Dr. Petelin in the amount of $153,000. Dr. Petelin appeals, claiming three of the four factual contentions submitted to the jury were unsupported by sufficient evidence. We hold that Dr. Petelin waived this argument by not objecting to the general verdict form and requesting a special verdict.

## I.

Mrs. Pratt was diagnosed with papillary carcinoma, a type of thyroid cancer. Pre-operative radiology studies—a CT scan and an ultrasound-guided fine needle biopsy—were conducted in early May 2007 and showed the existence of two masses in her neck. The ultrasound was interpreted by a radiologist to show a mass emanating off the bottom left lobe of her thyroid gland that measured 2 x 2 x 2 cm, as well as a smaller mass in the thyroid gland itself. The biopsy of the larger mass confirmed that Mrs. Pratt had cancer.

Dr. Petelin performed what he reported as a "total thyroidectomy" on Mrs. Pratt on May 17, 2007, during which, according to the pathology report, he claimed to have removed her entire thyroid gland and a single 0.9 cm mass that tested positive for cancer. Following the surgery, Mrs. Pratt expressed concern to her mother and her friend that she could still feel a lump in her neck. She met

with Dr. Petelin on May 29, told him about the mass she continued to feel in her neck, and complained of fatigue. Dr. Petelin assured her that these were normal post-operative symptoms. Mrs. Pratt continued to feel the mass in her neck and spoke to Dr. Petelin on the telephone in June, complaining of the mass, fatigue, hoarseness, and difficulty breathing and swallowing. Dr. Petelin assured her she was fine and did not need any scans or image studies. Mrs. Pratt next spoke to Dr. Petelin in person on June 21 and again related her various symptoms. She asked Dr. Petelin to order a scan of the area. He refused, telling her it was impossible for a mass to still be in her neck because he had just operated on that area. Feeling still worse the next day, Mrs. Pratt arranged a scan without the involvement of Dr. Petelin, which revealed that she still had a mass in her neck and that her lymph nodes were possibly malignant as well.

Mrs. Pratt made an appointment to see a different surgeon, Terence Tsue, M.D., who performed a "completion thyroidectomy," a neck dissection and a paratracheal lymph node dissection on July 17, 2007. Dr. Tsue's operative report described removing a "thyroid mass" as well as "suspicious lymph nodes." Aple. App. at 23. Dr. Tsue's surgical pathology report indicated the thyroid specimen that was removed measured 4 x 2 x 1.1 cm.

Mrs. Pratt filed this diversity action against Dr. Petelin, which was tried to a jury. After the close of evidence, the district court held a jury instruction conference. Instruction No. 9, the subject of this appeal, provided:

-3-

The plaintiff, Jennifer Pratt, claims that she sustained injuries and damages due to the fault of the defendant, Joseph H. Petelin, M.D. in the following respects: during the May 17, 2007 surgery by [1] failing to remove all thyroid tissue, including a cancerous mass, [2] failing to remove lymph nodes, [3] failing to timely review the May 18, 2007 pathology report and [4] failing to consider plaintiff's post-surgical symptoms.

The plaintiff has the burden to prove that her claims are more probably true than not true. It is not necessary that each of you agree upon a specific claim of fault.

The defendant denies that he was at fault and generally denies plaintiff's claims.

Aplt. App. at 68.

Dr. Petelin objected to this instruction on the basis that the final three fault contentions—failing to remove lymph nodes, failing to timely review the pathology report and failing to consider plaintiff's post-surgical symptoms—were not supported by sufficient evidence. But he did not object to the first contention, that he failed to remove all thyroid tissue. Significantly, Dr. Petelin neither objected to the use of a general verdict form nor requested a special verdict.

The jury returned a unanimous verdict finding Dr. Petelin's negligence had injured Mrs. Pratt. It awarded a total of $153,000: $15,000 in medical expenses, $13,000 for economic loss, and $125,000 for noneconomic loss. After judgment was entered, Dr. Petelin moved for judgment as a matter of law and alternatively for a new trial, raising the same objections to Instruction No. 9. The district court overruled both motions.

On appeal, Dr. Petelin continues to contend the district court erred by submitting Instruction No. 9 to the jury on the basis that three of the four factual contentions of negligence contained in the instruction were not supported by sufficient evidence. He specifically asserts that these contentions were not supported by expert witness testimony as required by Kansas medical malpractice law, and that they do not fall under the "common knowledge" exception to that rule.[1] He still does not claim any defect in the first factual contention contained in the instruction—that he negligently failed to remove all thyroid tissue, including a cancerous mass. Accordingly, it is uncontested that there is sufficient evidence to support at least one of Mrs. Pratt's factual theories of liability.

## II.

We review de novo whether a district court's jury instructions correctly stated the governing law. *Martinez v. Caterpillar, Inc.*, 572 F.3d 1129, 1132 (10th Cir. 2009). "We review the district court's decision about whether to give a particular instruction for abuse of discretion." *Id.* Under federal law, a party is entitled to an instruction on his theory of the case if it is supported by competent evidence. *Higgins v. Martin Marietta Corp.*, 752 F.2d 492, 496 (10th Cir. 1985).

---

[1] As a diversity case, the content of jury instructions is a matter of state substantive law but the determination of whether an instruction was erroneously given is governed by federal procedural law. *Martinez v. Caterpillar, Inc.*, 572 F.3d 1129, 1131-32 (10th Cir. 2009).

In making this determination, we review the evidence in the light most favorable to the verdict. *Martinez*, 572 F.3d at 1133.

In arguing that he is entitled to a new trial, Dr. Petelin relies on our cases holding that a general verdict cannot stand when "the district court erroneously instructed the jury on an improper theory and we are unable to determine with 'absolute certainty' whether the jury relied on the erroneous instruction . . . ." *Allen v. Wal-Mart Stores, Inc.*, 241 F.3d 1293, 1298 (10th Cir. 2001) (quoting *Farrell v. Klein Tools, Inc.*, 866 F.2d 1294, 1301 (10th Cir. 1989)); *see also Anixter v. Home-Stake Production Co.*, 77 F.3d 1215, 1229 (10th Cir. 1996) (same). But these cases address the situation where the jury may have based its verdict on an incorrect or entirely unsupported *legal* theory. They are thus distinguishable from the case at hand, where Dr. Petelin claims that some, but not all, of the *factual* bases presented to the jury for one legal theory—negligence— were unsupported by sufficient evidence.

For example, *Anixter* was a securities fraud action in which the jury returned a general verdict against the defendant after being instructed on both principal liability and aiding and abetting liability. 77 F.3d at 1221. We reversed and remanded for a new trial because the aiding and abetting theory of liability was subsequently found invalid by the Supreme Court under that section of the Securities Exchange Act of 1934. *Id.* at 1218-19. The district court's erroneous instruction in *Anixter* necessitated a new trial because it involved a separate and

legally erroneous "theory of liability" rather than a factual contention unsupported by sufficient evidence. *Id.* at 1229. In that context, we held that even a "remote" chance that the jury relied on the improper legal theory required reversal. *Id.* at 1231.

Similarly, in *Allen*, a shopper sued Wal-Mart after being injured by falling boxes of merchandise. 241 F.3d at 1295. The jury was instructed on two separate theories of liability, negligence and *res ipsa loquitur*, and returned a general verdict against Wal-Mart. *Id.* at 1298. On appeal, we concluded that the applicable substantive law prohibited the application of the *res ipsa loquitur* doctrine on the facts of the case. Once again, we reversed and remanded for a new trial because the district court had instructed the jury on an improper legal theory of liability, *id*. at 1299, and we could not say with "absolute certainty" that the jury had not relied on it. *Id.* at 1298.

In *Farrell*, the plaintiff sued a safety belt and lanyard manufacturer in a products liability case, and the jury returned a general verdict in favor of the manufacturer. 866 F.2d at 1296. The plaintiff appealed, contending the district court erred in instructing the jury on the defenses of abnormal use and assumption of the risk. *Id.* After holding that the instruction on abnormal use was given in error because it was not supported by sufficient evidence, we stated: "The general verdict frustrates a determination of the basis of the jury's decision, and reversal and remand for a new trial are required." *Id.* at 1300 (internal quotation marks

omitted).  Dr. Petelin contends that *Farrell* supports reversal in this case because appellants in *Farrell* obtained a reversal based on insufficient evidence to support an instruction on a theory of the defense.  Unlike here, however, the challenged instruction in *Farrell* consisted of a legal theory *wholly* unsupported by evidence.  Once one legal theory of the defense was eliminated as a potential basis of the jury's decision, reversal was required because we were unable to tell from the general verdict whether the jury had relied on the unsupported defense of abnormal use in finding for the defendant, rather than on the defense of assumption of the risk.  *Id.* at 1301.

Here, Mrs. Pratt proceeded under a single theory of liability—medical negligence—and advanced four factual contentions as possible bases for finding Dr. Petelin liable under this legal theory.[2]  In contrast to the cases discussed

---

[2] In response to Dr. Petelin's Renewed Motion for Judgment as a Matter of Law or, Alternatively, Motion for New Trial, the district court construed the first, uncontested claim of negligence contained in Instruction No. 9—failure to remove all thyroid tissue—as the "principal ground of alleged negligence . . . the thrust of the entire case."  Aplt. App. at 145.  In the opinion of the district court, the other three factual theories in the instruction were "secondary and incidental" to this primary contention and "the jury could hardly have found Defendant professionally negligent upon any of the latter three claims, without having found him first negligent for failing to find and remove all the cancerous tissue in or adjacent to the thyroid gland itself."  *Id.*  Because we hold that Dr. Petelin waived his opportunity to challenge the sufficiency of the evidence supporting these other three factual contentions by not seeking a special verdict, we need not decide whether Instruction No. 9 in fact constituted one or multiple bases of negligence liability.  We assume, *arguendo*, that each of these factual contentions represented a separate and distinct avenue of possible negligence for the jury to find Dr. Petelin liable.

above, Dr. Petelin does not contend the district court erred in instructing the jury on the legal theory of negligence in this case, but only that three of the four factual bases of negligence were unsupported by sufficient evidence. Accordingly, the cases applying our general verdict rule to instructions rendered erroneous by legal error do not control the outcome of this appeal.

Dr. Petelin attempts to avoid this conclusion by arguing that the three factual contentions he challenges in Instruction No. 9 are legally insufficient under Kansas law and thus erroneous as a matter of law, like the cases cited above. This argument was addressed and rejected by the Supreme Court in *Griffin v. United States*, 502 U.S. 46, 58-59 (1991).

In *Griffin*, a criminal case, the defendant was convicted by a general jury verdict of conspiring to defraud an agency of the federal government. *Id.* at 47. The government had alleged the illegal conspiracy on two factual bases: an attempt to defraud the Internal Revenue Service (IRS), and an attempt to defraud the Drug Enforcement Administration (DEA). *Id.* Although no evidence was introduced to link the defendant to any effort to defraud the DEA, the district court instructed the jury in a manner that would permit it to find the defendant guilty under either of the government's two factual contentions. *Id.* at 48. The Supreme Court affirmed Griffin's conviction, distinguishing between jury instructions that are erroneous due to "legal error," which require a new trial, and those that suffer from "insufficiency of proof" as to some but not all of the factual

-9-

bases of the indictment, which do not. *Id.* at 58. As examples, the court explained that legal error in this context would consist of convicting a defendant by a general verdict under a multi-prong statute, one prong of which is later held unconstitutional, *id.* at 52-53 (citing *Stromberg v. California*, 283 U.S. 359 (1931)), or convicting a defendant by general verdict for a conspiracy to violate two statutes, one of which is later determined to have been time barred, *id.* at 51-52 (citing *Yates v. United States*, 354 U.S. 298 (1957)).

The defendant in *Griffin* argued that "the distinction between legal error [] and insufficiency of proof [] is illusory, since judgments that are not supported by the requisite minimum of proof are invalid *as a matter of law . . . .*" *Id.* at 58 (emphasis in original). In response, the Court explained:

> In one sense 'legal error' includes inadequacy of evidence—namely, when the phrase is used as a term of art to designate those mistakes that it is the business of judges (in jury cases) and of appellate courts to identify and correct. . . . But in another sense—a more natural and less artful sense—the term 'legal error' means a mistake about the law, as opposed to a mistake concerning the weight or the factual import of the evidence. . . . [W]e are using 'legal error' in that latter sense.

*Id.* at 59.

The Court also discussed in *Griffin* why we differentiate between jury instructions that contain a legal error and those that contain factual contentions unsupported by sufficient evidence. The Court explained that "[j]urors are not generally equipped to determine whether a particular theory of conviction

-10-

submitted to them is contrary to law—whether, for example, the action in question is protected by the Constitution, is time barred, or fails to come within the statutory definition of the crime." *Id.* On the other hand, "[q]uite the opposite is true . . . when they have been left the option of relying upon a factually inadequate theory, since jurors *are* well equipped to analyze the evidence." *Id.* (emphasis in original) (citing *Duncan v. Louisiana*, 391 U.S. 145, 157 (1968)). We see no reason this rule should not also apply in civil cases. *See Cordance Corp. v. Amazon.com, Inc.*, 658 F.3d 1330, 1338 (Fed. Cir. 2011) (applying *Griffin* in civil case); *Walther v. Lone Star Gas Co.*, 952 F.2d 119, 126 (5th Cir. 1992) (same).

Because Dr. Petelin does not allege a "legal error" in the sense the Court explained in *Griffin*, his failure to request a special verdict as to each factual theory contained in Instruction No. 9 prevents him from challenging the sufficiency of the evidence supporting these factual theories on appeal. We applied this waiver rule most clearly in *Dixson v. Newsweek*, 562 F.2d 626 (10th Cir. 1977). There, a libel action was brought against Newsweek for an article that the plaintiff alleged contained several distinct libelous statements. *Id.* at 630-31. The jury entered a general verdict against Newsweek and on appeal the magazine argued, "that if any one of the statements on which plaintiff relies to establish defamation is not actionable for any reason, the verdict must be set aside because there is no way to know on what statement the jury predicated liability." *Id.* at

631. We held this argument had been waived, explaining that "[b]y failing to request special verdicts, Newsweek waived its right to complain on appeal." *Id.*; *see also Union Pac. R.R. Co. v. Lumbert*, 401 F.2d 699, 701 (10th Cir. 1968) ("In the absence of a pertinent objection to the charge or a request for a specific interrogatory a general verdict is upheld where there is substantial evidence supporting any ground of recovery in favor of an appellee."); *Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215, 1231 (10th Cir. 1996) (discussing rule from *Lumbert* and declining to apply it where the instruction contained a legal error rather than a factual contention not supported by sufficient evidence).

This waiver rule has also been applied by the Ninth Circuit in *McCord v. Maguire*, 873 F.2d 1271, 1274 (9th Cir. 1989), *amended*, 885 F.2d 650 (9th Cir.1989) ("[Defendant] contends that the jury may have based its verdict solely on the four allegedly unsubstantiated factual theories. . . . However, [defendant's] failure to request a special verdict as to each factual theory in the case prevents him from pressing this argument on appeal."), the Seventh Circuit in *Eastern Trading Co. v. Refco, Inc.*, 229 F.3d 617, 622 (7th Cir. 2000) (where jury heard instruction on a theory for which there was no evidentiary support and opposing party did not request special interrogatory, party "has only itself to blame for its inability to demonstrate that the jury was confused by the instruction"), and the Eighth Circuit in *Gen. Indus. Corp. v. Hartz Mountain Corp.*, 810 F.2d 795, 801 (8th Cir. 1987) (applying waiver rule to failure to object to general verdict on

damages).  *But see Gillespie v. Sears, Roebuck & Co.*, 386 F.3d 21, 30-31 (1st

Cir. 2004) (weighing arguments for and against the waiver rule and declining to

adopt it).  The waiver rule is also followed in numerous state courts.  *See*, *e.g.*,

*Nimetz v. Cappadona*, 596 A.2d 603, 606-08 (D.C. 1991) (citing state court

cases); *Halper v. Jewish Family & Children's Serv. of Greater Philadelphia*, 600

Pa. 145, 157 (2009).

The rationale for this rule was cogently stated by the court in *McCord*:

> Litigants like [the defendant] who wish to challenge the
> sufficiency of the evidence as to some, but not all, specifications
> of negligence must present an appropriate record for review by
> asking the jury to make separate factual determinations as to each
> specification.  Any other rule would unnecessarily jeopardize jury
> verdicts that are otherwise fully supported by the record on the
> mere theoretical possibility that the jury based its decision on
> unsupported specifications.  We will not allow litigants to play
> procedural brinkmanship with the jury system and take advantage
> of uncertainties they could well have avoided.

*McCord*, 873 F.2d at 1274.  We agree with this reasoning.  Defendants often may

have an incentive not to request a special verdict in order to strategically save a

ground for appeal; this is inefficient and unfair to plaintiffs, who should not be

forced to endure a second trial when the rules of procedure provide a solution.

While we do not know whether Dr. Petelin refrained from requesting a special

verdict in this case in order to save a ground for appeal, we see no reason to

deviate from *Dixson*, which places the burden to request a special verdict squarely

on the appellant in cases such as this, where insufficiency of the evidence is

asserted regarding some, but not all, of the factual theories contained in a jury instruction.

### III.

It is uncontested that there was sufficient evidence to support at least one factual basis of negligence asserted by Mrs. Pratt.  Because Dr. Petelin did not request a special verdict to indicate which factual theory or theories the jury based its verdict on, we are unable to conclude that the jury rested its decision on one of the three allegedly insufficiently supported factual theories.  Accordingly, we AFFIRM.