**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 18, 2013**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

DON ANGELL,

       Plaintiff-Appellant,

v.

FAIRMOUNT FIRE PROTECTION
DISTRICT,

       Defendant-Appellee.

No. 12-1465
(D.C. No. 1:11-CV-03025-CMA-CBS)
(D. Colo.)

**ORDER AND JUDGMENT**[*]

Before **BRISCOE,** Chief Judge, and **HOLLOWAY** and **HOLMES**, Circuit Judges.

This appeal concerns an employment discrimination case brought under the Americans With Disabilities Act (ADA). The facts we now state appear in the district court's Order Granting Defendant's Motion For Summary Judgment, or appear in the summary judgment record compiled below.

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## The Factual Background

Plaintiff-Appellant Angell was the fire chief of the Defendant-Appellee Fairmount Fire Protection District (the District) when he was terminated on March 31, 2011. The District is governed by a five-member board of directors. Plaintiff had been chief for ten years. During Mr. Angell's tenure, the District had produced revenue by providing controlled burn services for farmers and ranchers.

The controversy that purportedly led to Plaintiff's termination arose from Plaintiff's actions involving the District's personnel and resources in apparently extensive controlled burns carried out with a company called "Up In Smoke." As Plaintiff first presented the planned business venture to the board, these operations were to be undertaken in Nebraska, Kansas, and Oklahoma. The Board eventually learned, however, that the District did not receive payment for the services performed with Up In Smoke, and instead incurred losses of over $200,000. The Board was concerned when it learned about the unpaid amount owed for the services and that the services had been performed without a written contract.

In other instances, the District had provided controlled burn services on what the parties called a "deployment basis." The district judge noted in her order that in these instances the District would perform the service and then send a bill for it, without having a written contract in place from the start. The district judge noted that the first services rendered to Up In Smoke had been under such an arrangement, with the Board's acquiescence.

Mr. Angell presented the project with Up In Smoke to the Board in August 2009. At the August 2009 Board Meeting, Mr. Angell said he would have the Board's attorney, Petrock, "look things over and come up with an agreement for both parties." The Board minutes noted that this project would involve the purchase of $20,000 worth of equipment, which the Board approved. In late 2009 and early 2010, the District conducted controlled burns with Up In Smoke, and incurred substantial costs. However, no written agreement was prepared by attorney Petrock.[1]

As noted, the District had provided controlled burn services before, but this project apparently was different. The Board minutes describe the proposed activity as a joint venture, but it is not clear whether other controlled burns had or had not been conducted with private companies. In any event, what does seem clear from the record is that the primary difference between the Up In Smoke project and earlier controlled burn projects was that the District participated in controlled burns with Up In Smoke on multiple occasions without receiving compensation for time and expenses incurred, in contrast to the previous practice of billing (and presumably receiving payment) for controlled burns shortly after completion of those projects. Moreover, the evidence showed that the Board was unaware of the magnitude of the losses incurred until the Up In Smoke matter came up again in a board

---

[1]The parties disputed whether Plaintiff had provided Petrock with the information the latter would have needed to prepare a contract. That dispute is immaterial, however, because the Board held Plaintiff responsible for committing the District's resources to the project without the security of a written agreement without regard for who was to blame for the fact that no written contract was executed.

meeting on March 9, 2011. According to the Board minutes, Mr. Angell there admitted that he "blew" the deal for 2010, and Plaintiff Angell said that the "buck stops with him on everything." II Appx. 114.

The minutes also state that Mr. Angell told the Board that there was a contract with Up In Smoke and that it was a written contract. Later in the meeting when a member said that he did not recall signing a contract, Mr. Angell said that it had been discussed and that "we even had it put in the minutes," and that it was "a simple [,] one[-]page agreement." *Id.* Ten days later, however, in a letter to attorney Petrock, Plaintiff Angell wrote that there was no written contract, only "this working agreement to which all parties had agreed." One day later, Mr. Angell was suspended, and on March 31, 2011, he was fired. In the letter to Mr. Angell announcing that action, the Board said that it was because the directors "found that you entered into a contract without formal Board approval" at a loss of over $200,000.00. *Id.* at 124.

Plaintiff Angell had been diagnosed with colon cancer in September 2010. *See* I Appx. 72. He filed a worker's compensation claim a month later. Mr. Angell underwent major surgery and had numerous complications, like infections, afterward which required several additional hospitalizations. Sometime in February 2011, Board Chairman Corbin told Plaintiff Angell that he could not go out on emergency calls. IV Appx. 394.

After his termination, Plaintiff Angell brought this action in a Colorado state court. I Appx. 7-11. The District removed this action to federal court. The District later filed a

motion for summary judgment, and summary judgment was granted on November 5, 2012. VI Appx. 611-637.

Plaintiff Angell raises four issues on appeal: (1) whether the district court erred in holding that Plaintiff's termination was not on account of his disability; (2) whether Plaintiff produced sufficient evidence to create a jury question as to whether the proffered reason for the termination was a pretext for disability discrimination; (3) whether the district court erred in granting summary judgment for the District on Plaintiff's state-law claim of unlawful discharge in retaliation for his having filed a worker's compensation claim; and (4) whether Plaintiff was denied due process in the termination.

**Discussion**

"We review a grant of summary judgment *de novo*, applying the same standard as the district court." *McKnight v. Kimberly Clark Corp.*, 149 F.3d 1125, 1128 (10th Cir. 1998). Under Fed. R. Civ. P. 56(a), summary judgment should be entered by the district court if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." On appeal,

> [w]e examine the record to determine whether any genuine issue of material fact was in dispute; if not, we determine whether the substantive law was applied correctly, and in so doing we examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing the motion.

*McKnight*, 149 F.3d at 1128 (brackets and quotations omitted).

Discrimination on account of disability – like discrimination based on other protected factors such as race, age or gender – may be proven either by direct evidence or indirectly.

-5-

*See Crowe v. ADT Sec. Services, Inc.,* 649 F.3d 1189, 1194 (10th Cir. 2011); *Fischer v. Forestwood Co., Inc.*, 525 F.3d 972, 983 (10th Cir. 2008). Although counsel has not articulated the argument that Chairman Corbin's "order" for Mr. Angell not to go out on calls is direct evidence of discrimination, we will briefly explain why we believe that this evidence was insufficient to raise a genuine issue of material fact that would have precluded summary judgment for the Board.

First, although Mr. Corbin held the title of chairman, Mr. Angell has not produced any evidence that would allow us to conclude that the chairman held authority to make or revoke assignments without action by the Board itself. On this point, we agree with the district court's analysis and conclusion. The district court pointed out that for a statement to constitute evidence of discrimination, Plaintiff must show that it was "made by a decision maker, and that there was a nexus" between the statement and the adverse employment decision. *McKnight v. Kimberly Clark Corp.*, 149 F.3d 1125, 1129 (10th Cir. 1998). We also agree with the district court that although Mr. Corbin, as chairman of the Board, had some role in decision-making, it is not sufficient to show that one person might have had discriminatory animus (assuming that a jury could find such animus from Corbin's remark), when decisions are made by a group and so require the assent of others to have effect. *See Antonio v. Sygma Network, Inc.*, 458 F.3d 1177, 1184 (10th Cir. 2006).

Second, we are cited to no evidence to illuminate the consequences of this "order." Although Mr. Angell's brief colorfully describes this as being like telling a star football player that he was forbidden from going on the field, we do not know whether it actually

-6-

affected Mr. Angell's conduct.  We do not even know if there were any occasions when he might have gone out on an emergency call between the date of this "order" and the date of his suspension from all duties and the termination which quickly followed that suspension. Finally, no nexus is shown between the chairman's directive and the subsequent decision by the full board to terminate Mr. Angell.  Thus, we conclude that Mr Angell has not shown that there is a question of fact on his ADA claim under the direct evidence approach.

Alternatively, Plaintiff may proceed under the analytical framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973).  Under this framework, Plaintiff must first establish a prima facie case by showing: (1) that he is a disabled person as defined by the ADA; (2) that he is qualified, with or without reasonable accommodation, to perform the essential functions of the job; and (3) that his employer discriminated against him because of his disability.  *MacKenzie v. City and County of Denver*, 414 F.3d 1266, 1274 (10th Cir. 2005).  The district judge found that Mr. Angell had satisfied the first two requirements but had failed to produce evidence to show that the Board had discriminated against him because of his disability.[2]

---

[2]Mr. Angell argues that the Board's decision was based upon both his "disability" and the "perception" of his disability, which are alternative bases for coverage under the ADA. The district judge found that Plaintiff had shown that he was disabled, and accordingly there was no need to decide whether he was "perceived" to be disabled, which is a separate basis for protection under the ADA.  Angell contends that this approach "shortchanged and diminished the causal connection between plaintiff's disability and the perception of the Board Chairman (Corbin) when he ordered that plaintiff could no longer go out on calls as Fire Chief."  Brief of Appellant Don Angell at 41.  Plaintiff also argues that the perception of his disability continued from the time that the Board first learned of his cancer diagnosis

(continued...)

The evidence shows that the Board's decision to terminate Mr. Angell was based on his admitted mismanagement of the dealings with Up In Smoke. From the time that the Board learned of Mr. Angell's cancer, through months in which the disease and the resulting surgeries caused Mr. Angell considerable pain and interfered with every activity of his life (according to his own testimony), Mr. Angell continued his service as Fire Chief. It was only when – and immediately after – the Board learned of the magnitude of the losses caused by the venture with Up In Smoke that the Board took action against Mr. Angell. At the time, Mr. Angell was considerably more candid and contrite with respect to his conduct. In the Board meeting of March 9, 2011, Mr. Angell repeatedly expressed the view that the blame was on him. II Appx. 114.

The circumstances do not demonstrate that a reasonable inference of discrimination could be drawn. There is no showing of any connection between the later termination and the disability.[3] Therefore, there was no showing of an actual connection between the

---

[2](...continued)
to his termination. But of course the disability continued as well. We simply disagree with counsel for Mr. Angell that it makes a difference whether we view the case as one based on actual disability or as one based on being perceived as disabled.

[3]The colon cancer diagnosis was made in September 2010, and Plaintiff Angell was terminated from his employment with the District on March 31, 2011. In addition, we note that there was a 22-day gap from when Plaintiff told the Board that he would need additional surgery and his termination. The district court characterized the statement that Plaintiff not go out on calls as a stray comment and an expression of personal concern for Plaintiff's welfare. Plaintiff cites no evidence in conflict with this characterization other than temporal proximity, which in this case is insufficient.

termination and the earlier disability. The disability discrimination issue was therefore properly decided in the summary judgment order in favor of the Defendant Board.[4]

Moreover, even if Mr. Angell had successfully established a prima facie case, we would still uphold that district court's judgment because the discrimination claim fails at the next stage of the analysis. Under the *McDonnell Douglas* framework, if the plaintiff has shown a prima facie case, the burden shifts to the employer to show a non-discriminatory basis for the challenged employment decision. *See, e.g., McKnight*, 149 F.3d at 1128. Here, the Board has put forth a legitimate, non-discriminatory reason for discharging Mr. Angell: his admitted mismanagement of the Up In Smoke dealings which resulted in an economic loss to the District of over $200,000. Accordingly, the burden shifts back to Mr. Angell to show that his disability was "a determinative factor in defendant's employment decision, or show that the defendant's explanation was merely a pretext." *Id.*[5] Pretext can be demonstrated by evidence of "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in the employer's proffered reason sufficient that a reasonable fact finder could conclude that the employer did not actually make the challenged decision on the proffered basis. *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997).

---

[4]Plaintiff concedes that his state law discrimination claim is controlled by the same principles as the ADA claim. Therefore, summary judgment for the District on that claim was also proper.

[5]It is now well settled, of course, that the fact finder *may* infer a discriminatory motive if it has found that the employer's proffered reason was merely a pretext. *Randle v. City of Aurora*, 69 F.3d 441, 451 (10th Cir. 1995).

Plaintiff says that the loss incurred in the Up In Smoke operation could not have been the cause for his firing for at least two reasons. First, he says that some board members expressly said that was not the case. Second, Plaintiff Angell relies on the fact that, in general, the controlled burn programs were still making money for the district; indeed, he says that those overall efforts more than offset the losses from dealing with Up In Smoke. Plaintiff also accuses the Board members of inconsistency in their explanations for his termination. Thus, some members criticized Plaintiff for operations performed with Up In Smoke "without a contract," while others criticized Plaintiff for "entering into a contract" with Up In Smoke without proper authorization. Plaintiff also casts blame on the Board's attorney who, he says, was equally responsible for the lack of a written contract.

We see nothing in the purported inconsistency in members of the Board having criticized Mr. Angell for authorizing operations with Up In Smoke without a contract, while the criticism was also made that he had entered into a contract without Board approval. It is quite clear that these various speakers are using "contract" in different senses. Moreover, as the district judge pointed out, some confusion as to the existence *vel non* of a contract is understandable considering that Mr. Angell himself first told the Board that there was a "simple, one-page agreement," II Appx. 114, before admitting that there was no writing at all, only an oral agreement. Thus, taking the evidence in the light most favorable to Mr. Angell, there was an oral agreement with Up In Smoke. But the Board minutes show that members of the Board were concerned that Mr. Angell's failure to secure a written contract with Up In Smoke would hamper any belated efforts to receive payment for the services

rendered.  We see no evidence of pretext in this situation.  Mr. Angell, in his own words, "blew it," whether the problem is seen as having entered into a contract without Board approval or having committed District resources without a contract.

Nor do we find evidence of pretext in a statement by one Board member that the monetary loss was not the reason for Plaintiff's termination.  There is no evidence to suggest that any member of the Board was not genuinely troubled by the significant loss from the Up In Smoke operations.  In context the remark can only be taken as indicating a concern with the manner in which the loss was incurred.[6]  And that concern hardly reflects well on Mr. Angell.

---

[6]The statement was made by Mr. Herblan, a Board member, and appears in the record as a transcription of a hearing, although the nature of the hearing is not explained.  In any event, to support our characterization in the text of this Board member's views, we quote the question and the answer in full:

> Q. Mr. Herblan, was Mr. Angell terminated because this particular project lost significant amounts of district taxpayer funds?
>
> A. No.  That – that was not the reason.  The reason – and I'll state it again – that he was terminated, was failure to proceed, create the contract/agreement that he indicated to us he would produce with your cooperation, Mr. Petrock, and to be able to present that to the Board for review and subsequent approval. That never took place.
>     Mr. Angell apparently took it upon himself, without a signed agreement, contract, certainly with no Board approval, to enter into this agreement with Up In Smoke, again, resulting in the loss to the District in excess of a quarter of a million dollars, and leaving us without the legal teeth to pursue payment.

IV Appx. 329.

Plaintiff's assertion that the Board members were apprised all along about the Up In Smoke losses finds no support in the record. Indeed, Mr. Angell in his deposition admitted that the monthly reports which were given to the Board did not include accounts receivable and that there was "probably not" a way for the Board members to discern from the monthly statements whether or not the Up In Smoke account was delinquent. V Appx. 515-16. We are convinced that the purported pretext evidence was not sufficient to raise a triable issue.

Mr. Angell also contends that the district court erred in granting summary judgment for the District on Plaintiff's state law claim of unlawful discharge in retaliation for Plaintiff's having filed a worker's compensation claim.[7] However, Mr. Angell points to no evidence that would tend to show a causal connection between the worker's compensation claim and the termination. Indeed, at least one Board member encouraged Plaintiff Angell to file a claim under a specific Colorado statute which provides relief for firemen who develop cancer. Moreover, the worker's compensation claim was filed approximately five months before the District terminated Mr. Angell's employment, so Mr. Angell cannot rely on temporal proximity to support an inference of retaliatory intent.

Mr. Angell supports his claim of retaliation in part by reference to the manner in which his worker's compensation claim was defended. But the defense of the claim was controlled by the District's insurer, and Mr. Angell points to no evidence of Board

---

[7]In Colorado, an employer who retaliates against an employee for exercise of the right to claim a benefit under the state's worker's compensation laws may be liable to the employee in a common law tort action. *See Martin Marietta Corp. v. Lorenz*, 823 P.2d 100, 108 (Colo. 1992).

involvement in the defense of the claim.  Mr. Angell does cite the fact that the District's attorney, Mr. Petrock, declined to assist him in pursuit of his claim.  As the district court noted, however, Mr. Petrock obviously would have had a conflict of interest, and it would have accordingly been a breach of professional ethics for Mr. Petrock to have done anything other than decline to assist Mr. Angell.

The district court did not err in granting summary judgment for the District on Mr. Angell's retaliation claim.

The final issue is whether Plaintiff Angell was denied due process in the termination. However, the Plaintiff was an at-will employee, and he admitted he knew that was the case. Therefore, Plaintiff had no property right in continued employment, and consequently there was no due process right created.  Plaintiff's contention that he was wrongfully denied a hearing is baseless.  We have held that an entitlement to nothing but procedure cannot support a due process claim.  *Robbins v. U.S. Bureau of Land Mgmt.*, 438 F.3d 1074, 1085 (10th Cir. 2006).  The district court did not err in granting summary judgment for the District on this claim.

Accordingly, the summary judgment is AFFIRMED.[8]

ENTERED FOR THE COURT

William J. Holloway, Jr.
Circuit Judge

---

[8]Appellee's motion to strike Appellant's supplemental authority is denied as moot. In his Rule 28(j) letter, Appellant did attempt to raise an argument not raised in his opening brief, as Appellee's motion details, and we have declined to consider that new argument, consistent with our practice.