FILED
**United States Court of Appeals**
**Tenth Circuit**

**June 27, 2014**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

KAREN SCAVETTA,

       Plaintiff–Appellant,

v.

DILLON COMPANIES, INC.,
d/b/a King Soopers, Inc.,

       Defendant–Appellee.

_____

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION,

       Amicus Curiae.

No. 13-1311
(D.C. No. 1:10-CV-02986-WJM-KLM)
(D. Colo.)

---

**ORDER AND JUDGMENT**[*]

---

Before **LUCERO** and **McKAY**, Circuit Judges, and **BRORBY**, Senior Circuit Judge.

---

Karen Scavetta sued her former employer, the Dillon Companies, Inc., d/b/a

King Soopers, Inc., for violations of the Americans with Disabilities Act of 1990

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

("ADA"), 42 U.S.C. §§ 12101 et seq. A jury returned a verdict in favor of King Soopers, and Scavetta appeals, challenging a jury instruction issued by the district court. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

**I**

Scavetta worked for King Soopers for thirty years, the last fifteen years as a pharmacist. In 2009, she was fired for refusing to administer immunizations to customers, despite being restricted from doing so by her doctor due to symptoms of rheumatoid arthritis ("RA"). Although Scavetta had requested an exemption from administering immunizations, her request was denied. Consequently, she brought this action, claiming King Soopers failed to provide her a reasonable accommodation and retaliated against her in violation of the ADA. See 42 U.S.C. §§ 12112(b)(5)(A), 12203(a).[1]

Prior to trial, the parties offered competing definitions of the term "major life activities" for purposes of establishing Scavetta's disability.[2] King Soopers sought to define "major life activities" to include "such activities as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, or working." (Quotation omitted). Scavetta argued that this definition failed to account

---

[1] Scavetta also asserted four other claims, but the district court granted summary judgment in favor of King Soopers on two of them and Scavetta voluntarily dismissed the remaining two.

[2] The ADA defines "disability" as "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1)(A).

for "'the operation of a major bodily function, including . . . functions of the immune system.'" (Quoting 42 U.S.C. § 12102(2)(B)).  She proposed an instruction that expressly stated this statutory provision.

At the close of evidence, the district court held a jury instruction conference. The court proposed to instruct the jury as follows:  "Ms. Scavetta has a disability if she has a physical impairment that substantially limits one or more of her major life activities, such as performing manual tasks, walking, standing, or working."  Scavetta objected, insisting the instruction failed to reflect that major life activities can "include the operation of major bodily functions such as the immune system or musculoskeletal system."  The court overruled her objection, however, explaining that the instruction conformed to the evidence, which "had to do with performing manual tasks, walking, standing or working."  The court instructed the jury accordingly, and the jury returned a verdict for King Soopers.  Scavetta now challenges the instruction.

## II

"We review a district court's decision to give a particular jury instruction for abuse of discretion, but we review de novo legal objections to the jury instructions." Lederman v. Frontier Fire Prot., Inc., 685 F.3d 1151, 1154 (10th Cir. 2012) (quotation omitted).  "Faulty jury instructions require reversal when (1) we have substantial doubt whether the instructions, considered as a whole, properly guided the jury in its deliberations; and (2) when a deficient jury instruction is prejudicial."

- 3 -

Jones v. United Parcel Serv., Inc., 674 F.3d 1187, 1198 (10th Cir. 2012) (quotation omitted).  Although a party is entitled to have the jury properly instructed on her theory of the case, there must be competent evidence to support that theory.  Pratt v. Petelin, 733 F.3d 1006, 1009 (10th Cir. 2013).

"To establish a valid claim under the ADA, a plaintiff must first prove by a preponderance of the evidence that she has a disability."  Berry v. T-Mobile USA, Inc., 490 F.3d 1211, 1216 (10th Cir. 2007) (quotation omitted).  "To satisfy the ADA's definition of disability, a plaintiff must (1) have a recognized impairment, (2) identify one or more appropriate major life activities, and (3) show the impairment substantially limits one or more of those activities."  Id. (quotation omitted).  A "major life activity" is defined to include "the operation of a major bodily function, including but not limited to, functions of the immune system" under the ADA Amendments Act of 2008 ("ADAAA"), Pub. L. No. 110-325, sec. 4(a), § 3(2)(B), 122 Stat. 3553 (codified at 42 U.S.C. § 12102(2)(B)).  A regulation promulgated by the Equal Employment Opportunity Commission similarly defines "major life activities" to include "[t]he operation of a major bodily function, including functions of the immune system [and] musculoskeletal . . . functions." 29 C.F.R. § 1630.2(i)(1)(ii).

Against this backdrop, the parties agree that "major life activities" can include "the operation of a major bodily function."  42 U.S.C. § 12102(2)(B).  They disagree, however, whether there was evidence that Scavetta's major bodily functions were

- 4 -

substantially limited. Scavetta asserts there was such evidence because RA inherently affects the immune and musculoskeletal systems. She says this was enough to warrant instructing the jury that major bodily functions can constitute major life activities. King Soopers, however, contends there was no specific evidence that RA substantially limits the operation of Scavetta's immune and musculoskeletal systems, and thus there was no need to instruct the jury on major bodily functions. The issue we must decide is whether RA's inherent effect on major bodily functions was substantially limiting such that it warranted an instruction to the jury.

Since the ADA was amended, some courts have considered whether an impairment's inherent effect on a major bodily function is substantially limiting. These courts generally refer to 29 C.F.R. § 1630.2(j)(3)(iii), which lists examples of impairments that "will, in virtually all cases," be found to substantially limit a major bodily function, id. § 1630.2(j)(3)(ii). See, e.g., Tadder v. Bd. of Regents of Univ. of Wis. Sys., No. 13-CV-105-WMC, 2014 WL 1405171, at *19 n.9 (W.D. Wis. Apr. 10, 2014) (to be published in F. Supp. 2d) ("Post-ADAAA, the endocrine system is expressly listed as a 'major bodily function' . . . . This would appear to generally establish diabetes as an impairment imposing a substantial limitation on a major life activity."); Angell v. Fairmount Fire Prot. Dist., 907 F. Supp. 2d 1242, 1250 (D. Colo. 2012) ("'[I]t should easily be concluded that . . . cancer substantially limits the major life activity of normal cell growth' and accordingly, constitutes a

disability." (ellipses in original, additional alteration omitted) (quoting 29 C.F.R. § 1630.2(j)(3)(iii)), aff'd, 550 F. App'x 596 (10th Cir. 2013); Katz v. Adecco USA, Inc., 845 F. Supp. 2d 539, 548 (S.D.N.Y. 2012) ("Cancer will virtually always be a qualifying disability [because it limits normal cell growth]." (quotation omitted)). RA is not among these impairments, but the appendix to the regulations states that "rheumatoid arthritis affects musculoskeletal functions," 29 C.F.R. pt. 1630, App. § 1630.2(i).

These authorities are insufficient to establish that RA will substantially limit major bodily functions in all cases. "There is no 'per se' disability." Id. § 1630.2(j)(3). An individualized assessment is still required to determine "whether an impairment substantially limits a major life activity." 29 C.F.R. § 1630.2(j)(1)(iv). Although the term "'[s]ubstantially limits' is not meant to be a demanding standard," id. § 1630.2(j)(1)(i), the regulations state that "not every impairment will constitute a disability," id. § 1630.2(j)(1)(ii). Moreover, while the question of "whether [an] impairment substantially limits a major life activity is ordinarily a question of fact for the jury," Carter v. Pathfinder Energy Servs., Inc., 662 F.3d 1134, 1142 (10th Cir. 2011), there must be some evidence to support the theory that RA substantially limited Scavetta's immune and musculoskeletal systems, see Pratt, 733 F.3d at 1009. We have previously explained that "it is not sufficient for a plaintiff to identify an impairment and leave the court to infer that it results in substantial limitations to a major life activity." Sanchez v. Vilsack, 695 F.3d 1174,

1178 (10th Cir. 2012) (examining substantial limitation under Rehabilitation Act); see id. at 1177 n.2 (noting that same substantive standards apply for determining disability under ADA and Rehabilitation Act).

At trial, Scavetta's evidence focused on RA's effects on the immune systems of RA patients in general. Scavetta's rheumatologist, Dr. Vance Bray, described RA as "a disorder of the immune system," in which "the immune system starts attacking the joints and other organs." He said it is usually a progressive condition and can affect the lungs or heart, but it is predominantly a disease of the joints. Moreover, Dr. Bray explained that RA causes toxins to be released into the joints, which can lead to the deterioration of bone and thinning of cartilage. He suspected early in his treatment of Scavetta that she had RA and, consistent with the tendered instruction, testified that she experienced pain, stiffness, fatigue, swelling, and tenderness in her joints. But his testimony returned to a general prognosis for RA patients, who he said have a high risk of disability that, before the use of current medications, was as much as a 50% chance of total disability within ten years.

Scavetta's testimony was more individualized, but focused on her physical activities that were limited by RA. She said she had difficulty performing manual tasks such as opening prescription medicine bottles and retracting needles when giving injections. Scavetta also stated that she had occasional trouble walking and experienced difficulty lifting pots and pans when cooking. Additionally, she had

- 7 -

trouble squeezing, gripping, and grasping, and could no longer ride her bike, play tennis or golf, or garden.

Based on this testimony, the district court tailored the instruction to reflect that "Ms. Scavetta has a disability if she has a physical impairment that substantially limits one or more of her major life activities, such as performing manual tasks, walking, standing, or working." This instruction properly focused the jury's attention on the evidence relating to limitations of Ms. Scavetta's physical activities. See Dilley v. SuperValu, Inc., 296 F.3d 958, 965 (10th Cir. 2002) (finding no plain error where instruction focused jury's attention on evidence of how impairment substantially limited plaintiff's major life activity). Because there was no specific evidence that RA substantially limited the operation of Scavetta's major bodily functions, the court correctly declined to reference major bodily functions in its instruction.

### III

The judgment of the district court is **AFFIRMED**.

Entered for the Court


Carlos F. Lucero
Circuit Judge